# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| ANDRES CANO-GOMEZ, | : | PRISONER CIVIL RIGHTS |
| GDC ID 1001265017, | : | 42 U.S.C. § 1983 |
|    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:16-CV-1933-AT-CMS |
| DEPUTY CROMER, et al., | : | |
|    Defendants. | : | |

## **ORDER**

Proceeding *pro se*, state inmate Andres Cano-Gomez has filed a Civil Rights Complaint Pursuant to 42 U.S.C. § 1983. *See* [4].

Because Cano-Gomez is a prisoner, his complaint is subject to screening pursuant to 28 U.S.C. § 1915A. To survive screening the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly:

> [While the] plausibility standard is not akin to a "probability requirement," . . . it asks for more than a sheer possibility that the defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 557)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Because Cano-Gomez is proceeding *pro se*, the undersigned has liberally construed his complaint and other filings. *See, e.g.*, *Gilmore v. Hodges*, 738 F.3d 266, 280 (11th Cir. 2013). "But liberal construction is not the same thing as wholesale redrafting." *Id.*

So construed, Cano-Gomez alleges that on April 12, 2015, while he was in pretrial detention in the Henry County Jail, he observed "a fight br[eak] out . . . between [fellow detainee] Anthony Fields and [Deputy] Cromer." [1] at 6. Concluding that Deputy Cromer was "way to[o] aggressive with inmate Fields" and "handling a situation wrongfully," Cano-Gomez began "yelling" at Deputy Cromer. *Id.* at 6 & 7.

Officer Galantie instructed Cano-Gomez to turn around, face the wall, and put his hands behind his back to be handcuffed. [4] at 5. Cano-Gomez "complied," while asking "why was I being cuffed," and then asking "what rules have I violated?" *Id.* Receiving "no answer," Cano-Gomez turned

toward Officer Galantie.  *Id.*  In response, Officer Galantie "slammed" him to the ground and said "'tase him.'"  *Id.* at 5-6.  Officer Colombo then tased Cano-Gomez.  *Id.* at 6.  Sergeant Taylor and Officers Timbs and Burns "were present," but did not "order[] Defendant Colombo to stop tasering the Plaintiff."  *Id.*

Cano-Gomez was disciplined for "refusing to lock down" and "written up for inciting a riot."  *Id.* at 7-8; *see also* [1] at 13.  Cano-Gomez was also charged in state court with "felony obstruction o[f] a law enforcement" officer, *see* [1] at 15, and in August 2015 he entered a negotiated guilty plea to misdemeanor obstruction of an officer, *see* [1] at 19.

In his complaint, Cano-Gomez alleges that "as a result of the . . . incident, [he] has suffered from serious sever[e] back pain, back spasms, headaches, dizziness, decreased quality of sleep, exacerbation of PTSD, mental condition, increased irritability, decreased concentration, and episodic narcolepsy."  *Id.* at 8.[1]

---

[1] In a grievance filed on June 30, 2015, Cano-Gomez identified no physical injury resulting from the April 12, 2015 incident; rather, he complained only that he was "stressed emotionally and mentally."  [1] at 3; *see also* [1] at 12 (same).  In a statement dated April 14, 2015, Cano-Gomez attributed "extreme pain" in his back and ankle to a "pri[o]r car accident."  [1] at 15.

Cano-Gomez has named Deputy Cromer, Officer Galantie, Sergeant Taylor, Officer Timbs, and Officer Burns as defendants. Cano-Gomez demands, *inter alia*, declaratory relief, more than $1,600,000 in compensatory and punitive damages, "six sessions of diversity and sensitivity training" for the defendants, "six sessions [for the defendants with a] psychologist to explore personal issues related to non-compliance with authoritative and regulatory standards which are mandated for professional practice," additional training for all Henry County Jail staff "on the use of force," and "remov[al] of his criminal history drug conviction." *Id.* at 9 & 11.

Based on the pleading standards applicable to "excessive force" and "failure to protect" claims and the undersigned's judicial experience and common sense, Cano-Gomez's complaint, as currently drafted, "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). In general, jail officers are authorized to use force when a prisoner fails to obey an order.

4

*Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). "And prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well thought out." *Id.*

Thus, "[t]he 'core judicial inquiry' [is] 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). It is not enough to show that "the use of force was both excessive and unnecessary;" a pretrial detainee must also show that the defendant(s) "maliciously and sadistically used force to cause . . . harm" by addressing a set of five factors. *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).

Cano-Gomez's complaint, as currently drafted, does not address these factors and thus does not sufficiently allege that the defendants acted maliciously and sadistically. Consequently, Cano-Gomez has not stated a claim upon which relief may be granted against certain defendants for using excessive force, and, in the absence of a viable excessive force claim,

5

Cano-Gomez also has not stated a claim upon which relief may be granted against the other defendants for failure to protect him.

Because Cano-Gomez is proceeding *pro se* and a more-carefully-drafted complaint might state a claim upon which relief can be granted, I will afford Cano-Gomez an opportunity to prepare and file an amended complaint. *See Bank v. Pitt*, 928 F.3d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

If after reading this Order, Cano-Gomez intends to proceed with this case, he must file a more-carefully-drafted amended complaint no later than February 24, 2017. If Cano-Gomez files an amended complaint, I will screen it pursuant to § 1915A to determine whether it adequately states any claim(s) to relief that should be permitted to proceed.

Cano-Gomez is reminded that he must "notify the Court promptly of any change of address while this case is pending" and "that failure to comply fully with any lawful Order may result in dismissal of this case." [2] at 2 (citing LR 41.2B & 41.3A(2), NDGa.).

The Clerk is **DIRECTED** to resubmit this case to the undersigned on February 24, 2017.

**SO ORDERED**, this 9th day of February, 2017.

_____
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE